

U.S. COURT OF APPEALS
RECEIVED
NOV 0 4 2025
FIFTH CIRCUIT

# CHARLES JOHNSON,

Defendant—Appellant

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION
## NO. 4:24-CV-00988

---

## APPELLANT'S BRIEF

---

Charles Johnson
617-429-4718
charlescjohnson88@gmail.com
*Pro Se—*
*Appellant*

i

## CERTIFICATE OF INTERESTED PERSONS

### No. 25-10919

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

---

### POINT BRIDGE CAPITAL, LLC; HAL LAMBERT,

Plaintiffs—Appellee

v.

### CHARLES JOHNSON

Defendant—Appellant

---

The pro se Defendant—Appellant certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**<u>Defendant-Appellant</u>**

Charles Johnson
617-429-4718

charlescjohnson88@gmail.com

**Plaintiff-Appellee**

**Point Bridge Capital, LLC.** Point Bridge Capital is an investment adviser firm organized as a limited liability company.

**Hal Lambert.** Hal Lambert is the Founder, President, and CEO of Point Bridge Capital, LLC.

**Counsel for Plaintiff-Appellee**

Point Bridge Capital, LLC; Hal Lambert:

William Thompson
DLA PIPER LLP

/s/Charles Johnson
Charles Johnson
**Pro Se Defendant-
Appellant**

## STATEMENT REGARDING ORAL ARGUMENT

The Court should grant oral argument in this case. This case presents important legal issues relating to excess punitive damages, sanctions issued according to Federal Rule of Civil Procedure 26(b)(1), adjudication of conflict of interest issues, the qualified reporter's privilege in light of Federal Rule of Civil Procedure 26(b)(1), the undue burden created by refusal to allow for testimony under Federal Rule of Civil Procedure Rule 43(a), and damages calculated without an evidentiary hearing under Federal Rule of Civil Procedure 55(b)(2), including the proper legal standard that governs those rulings and how that standard applies to complex claims brought against individuals under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS…………..…....……...ii

STATEMENT REGARDING ORAL ARGUMENT……...………...iv

TABLE OF CONTENTS……………………………….….……...v

INDEX OF AUTHORITIES……………………………….…..vii

JURISDICTIONAL STATEMENT……………………………………...……………x

STATEMENT OF THE ISSUES……………………………………………………xi

INTRODUCTION…………………………….……………....1

STATEMENT OF THE CASE……………….…………………3

I.    FACTUAL BACKGROUND……………………………........3

II.   PROCEDURAL HISTORY……………..…………………...4

SUMMARY OF THE ARGUMENT…………….……………..5

ARGUMENT……………………………………………….8

I.    Standard of Review……………………………………8

II.   The Judgment Fails the Three-Pronged Test for Excessive Punitive Damages…………………………………………9

III.  The District Judge Violated the Fifth Circuit's Guidance on Sanctions……………………………………………………11

IV.    The District Judge Failed to Address Conflicts of Interest…...11

V.    The Discovery Process Was Used to Harass and Intimidate…13

VI.    The District Judge's Actions Were Excessively Harsh………14

VII.   The District Judge's Refusal to Allow Teleconference
Appearance Was Unduly Burdensome……………………………..15

VIII.  The Damages Model Was Flawed……………………………15

XI.    Plaintiff's Litigation Financing Scheme Leaves Plaintiff With a
Lack of Standing………………………………………………………16

CONCLUSION………………………….…………………………..17

CERTIFICATE OF
SERVICE………………………….…………………………...19

CERTIFICATE OF
COMPLIANCE………………………….…………………………..19

# INDEX OF AUTHORITIES

## Cases

*Miller v. Transamerican Press, Inc.,*
    621 F.2d 721 (5th Cir. 1980)...................................*Passim*

*In re Selcraig,*
    705 F.2d 789 (5th Cir. 1983)......................................*Passim*

*BMW of N. Am. v. Gore*
    517 U.S. 559 (1996)...........................................*Passim*

*State Farm Mut. Auto. Ins. Co. v. Campbell*
    538 U.S. 408 (2003)..........................................…....*Passim*

*State v. Conner*
    381 N.C. 643, 673, 873 S.E.2d 339, 358 (2022)...........*Passim*

*Carter v. Fenner*
    136 F.3d 1000, 1005 (5th Cir. 1998)...............................8

*FDIC v. U.S. Fire Ins. Co.*
    50 F.3d 1304, 1311 (5th Cir. 1995)...............................12

*In re American Airlines, Inc.*
    972 F.2d 605, 614–16 (5th Cir. 1992)............................12

*In re Dresser Indus., Inc.*
    972 F.2d 540, 545 (5th Cir. 1992)............................*Passim*

*United States v. Smith*
    135 F.3d 963, 972 (5th Cir. 1998)................................13

*Pipitone v. Biomatrix, Inc.*

288 F.3d 239, 244–50 (5th Cir. 2002)...........................16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
     509 U.S. 579 (1993)..........................................*Passim*

*Kumho Tire Co. v. Carmichael*
     526 U.S. 137, 119 S. Ct. 1167 (1999).......................*Passim*

*Pipitone v. Biomatrix, Inc.*
     288 F.3d 239, 244–50 (5th Cir. 2002).......................*Passim*

*Crabtree v. Allstate Prop. & Cas. Ins. Co.*
     140 F.4th 623, 625 (5th Cir. 2025)................................16

*United States of America et. al. v. Healthcare Associates of Texas
LLC et. al.*, 3:19-cv-2486 (N. D. Tx. 2019)..............................17

**Statutes**

28 U.S.C. § 1291.........................................................viii

18 U.S.C. § 1962.........................................................viii

28 U.S.C. § 1331.........................................................viii

28 U.S.C. § 1332.........................................................viii

Tex. Civ. Prac. & Rem. Code §§ 22.021–027...........................5

Tex. Civ. Prac. & Rem. Code § 41.003..................................10

Tex. Civ. Prac. & Rem. Code § 41.008..................................10

## Rules

Fed. R. Civ. P. 55(c)……………………………………………………8

Fed. R. Civ. P. 37(b)(2)…………………………………………………...11

Fed. R. Civ. P. 26(b)(1)……………………………………………..*Passim*

Fed. R. Civ. P. 26(g)……………………………………………*Passim*

Fed. R. Civ. P. 26(c)…………………………………………………14

Fed. R. Civ. P. 43(a)…………………………………………………15

N.D. Tex. L.R. 83.10………………………………………………...15

Fed. R. Civ. P. 55(b)(2)………………………………………………...16

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction because this is an appeal of a district court's final judgment against the Appellant. 28 U.S.C. § 1291. The notice of appeal was timely filed.

The District Court had subject matter jurisdiction over Appellants' cause of action asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, because that cause of action arises under the laws of the United States. 28 U.S.C. § 1331. The District Court had diversity jurisdiction under 28 U.S.C. § 1332.

# STATEMENT OF THE ISSUES

1.   The Supreme Court has held that punitive damages awards violate due process when three factors are not taken into account: one, the degree of reprehensibility of the defendant's misconduct; two, the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; three, the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Did the District court err by failing to apply these factors in its calculation of damages?

2.   The Fifth Circuit has held that for a default order to apply, several factors must be met: first, that dismissal with prejudice typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; second, the violation of the discovery order must be clearly attributable to the party and not to counsel; third, that the violating party's misconduct must substantially prejudice the

opposing party; fourth, that dismissal is usually improper if a less drastic sanction would substantially achieve the desired deterrent effect. Given questions of the Defendant's willfulness to comply with discovery orders, the burden imposed by aspects of District Court's discovery orders, and the District Court's failure to consider lesser sanctions, did the District court err in applying litigation-ending sanctions that ultimately struck the Defendant's answer from the court's consideration?

3.    The Fifth Circuit has looked to three factors in considering the disqualification of counsel in a case: one, the appearance of impropriety; two, the possibility of the occurrence of specific impropriety; three, the likelihood of public suspicion from the impropriety outweighing any social interest in the lawyer's continued participation in the case. Did the district court err and burden the Defendant by failing to consider these factors when Defendant brought up conflict of interest issues relating to the opposing party's counsel?

4.    Federal Civil Rules require that counsel certify that discovery requests are not unduly burdensome to the opposing party. Given the broadness of Plaintiff's discovery requests and that the district court failed to give weight to the Defendant's claim of the qualified reporter's privilege in light of these requests, did the District Court proceed err in not holding that these requests were unduly burdensome?

5.    The Federal Rules of Civil Procedure aim to resolve cases on their merits. Did the District court, in striking defenses, escalating costs, and restricting the participation of the Defense, render a judgment that contravened this aim?

6.    Under Federal Rule of Civil Procedure 43(a), courts can permit testimony in open court via videoconference or some other form of contemporaneous transmission from a separate location. Federal Rule of Civil Procedure 26(b)(1) require discovery to be proportional to the

needs of the case. Did the District court unduly burden the Defendant by denying the ability to appear via teleconference and issue discovery orders that were not proportional to the needs of the case?

7.    Unliquidated damages on default typically require a tested damages model to be employed along with some requisite level of proof and evidentiary gatekeeping. Did the District Court err by accepting an untested damages model when it entered judgment against the defendant?

8.    The Fifth Circuit has held that parties can lack sufficient standing when the issue of champerty is at play. Did the District Court err in failing to consider issues surrounding champerty and allowing discovery to be tailored to uncover such issues in its handling of the case?

## INTRODUCTION

Plaintiffs brought a civil RICO action and breach of contract claims against the Defendant in Federal District Court in the Northern District of Texas, Fort Worth on October 16, 2024, alleging that Johnson, along with Gator Greenwill, falsely presented themselves as assets of Federal intelligence agencies and used this posture to extort Point Bridge Capital. Plaintiffs further alleged that the Defendant divulged protected information regarding Umbra, a company with which Defendant maintained a Subscription Agreement.

During the ensuing litigation, Defendant repeatedly addressed issues such as conflicts of interest between opposing counsel and the representation of his family trust, concerns regarding litigation funding behind the case, and burdensome and overbroad discovery requests that lacked direct relevance and held the potential to compromise protected information.

On June 23, 2025, the District Court entered a default judgment against the Defendant, striking his amended answer and entering

judgment against him for liability for actual, treble, and punitive damages on all of Plaintiffs' claims.

At trial, Plaintiff's argument and evidence largely concerned losses supposedly caused by the defendant, namely lost earned media and lost fees as a result of the defendant's alleged conduct. After the trial, the District Court entered judgment against the plaintiff.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

Appellant Johnson bases his statement of the facts on the facts pleaded in his Amended Answer that was stricken by the District Court after the entry of a default judgment. *See* ECF No. 36. The majority of Plaintiff's claims are spurious and largely amount to a curated gallery of the Defendant's blogging and social media activity. Furthermore, given the wrongdoing on part of the plaintiff, there's little if any claim to the alleged damages suffered as a result of their course of conduct with the Defendant. Additionally, effectively all of the damages allegedly suffered by the Plaintiff were outside of the

control and knowledge of the Defendant and the result of organic aspects of the Plaintiff company's business environment, namely market forces, a changing investment environment, and changes in content thought of as relevant or pressing by the media.

Given the issues with Discovery Orders that surrounded much of the District Court case, the Defendant was not afforded ample opportunity through which to assert valid counterclaims. Additionally, the burdensome nature of discovery in the District Court case severely hampered Defense's ability to present a stronger defense.

During the District court case, Defendant brought up issues regarding conflicts of interest with opposing counsel, namely an imputed conflict with opposing counsel's firm being responsible for managing matters related to the administration of the defendant's family trust. Nonetheless, the District court proceeded to allow defendant to maintain the same counsel throughout the litigation.

Later in proceedings, during a motion hearing, Plaintiff's counsel acknowledged allegations that their case was subject to an outside funding agreement, an arrangement which could have shown

the Plaintiffs as having a lack of standing for the case. *See* ECF No. 55, p. 28, 9-18. Leading up to trial, the Plaintiff attempted to strike any references to this scheme through a motion in limine. *See* ECF No. 83, p. 2. The District Court denied that part of the motion, but left open the possibility for the Plaintiff to resurrect it during trial.

During the trial phase, Plaintiff maintained that the alleged injury suffered was restricted to reputational damage, fee income, and earned media. *See* ECF No. 99, p. 23, 7, p. 38, 4-7, p. 69, 9-13. Plaintiff's counsel then spent most of the trial explaining the extent of these damages by cross-examining the Plaintiff, an expert witness, and by presenting a third party valuation. *See* ECF No. 99, p. 67.

## II.     PROCEDURAL HISTORY

This appeal arises from a default judgment entered against Johnson, together with an award of punitive damages.

Johnson objected that discovery was overbroad, burdensome, and, in key respects, sought information protected by the qualified reporter's privilege. See *Miller v. Transamerican Press, Inc.*, 621 F.2d

721 (5th Cir. 1980), as modified, 628 F.2d 932 (5th Cir. 1980); *In re Selcraig*, 705 F.2d 789 (5th Cir. 1983); *Tex. Civ. Prac. & Rem. Code §§ 22.021–027.*

Johnson also raised conflicts concerning Plaintiff's counsel's representation. The court struck Johnson's defenses and entered default based on discovery disputes.

At the damages stage, the court accepted Plaintiff's damages model without a Daubert hearing and without offering Johnson a meaningful opportunity to present a rebuttal expert or cross-examine Plaintiff's expert.

The court then entered judgment against the Defendant.

## SUMMARY OF THE ARGUMENT

The judgment of the District Court should be reversed.

First, the punitive damages award is unconstitutional under *Gore* and *State Farm*. The record reflects purely economic injury, no threat to health or safety, no financial vulnerability, and no adjudicated findings of intentional malice following adversarial

testing. The ratio of punitive to compensatory damages exceeds what *State Farm* permits, and the award is not aligned with comparable penalties, including Texas's exemplary-damages framework in Chapter 41.

Second, the court imposed a "death-penalty" sanction without the specific findings this Court requires: willfulness or bad faith attributable to the client, prejudice, and the inadequacy of lesser sanctions. *State v. Conner*, 381 N.C. 643, 673, 873 S.E.2d 339, 358 (2022). Discovery should have been managed under Rules 26(b)(1) and 26(g), not converted into default.

Third, the court did not resolve conflicts of interest raised concerning Plaintiff's counsel. Under *American Airlines* and *U.S. Fire*, the court was obliged to adjudicate the issue using the "substantial relationship" test.

Fourth, the discovery orders did not honor proportionality, certification, and First Amendment/source-protection limits. Those failures culminated in dispositive sanctions and distorted the damages phase.

Fifth, the District court, in entering default judgement against the defendant and allowing burdensome discovery issues to continue, failed to adjudicate the case on the merits, as outlined by the essence of the Federal Rules of Civil Procedure.

Sixth, the court's cumulative management decisions—including refusal to allow cost-sensitive remote participation under Rule 43(a) and insistence on local counsel without controlling discovery burden—undermined Rule 1's promise of the "just, speedy, and inexpensive" resolution of cases.

Seventh, even after default, Plaintiff was required to prove unliquidated damages through admissible, reliable evidence. The court accepted an untested model without a Rule 55(b)(2) hearing and without *Daubert/Kumho* gatekeeping. That is reversible error.

Lastly, discovery in the district court limited the ability of defendant to make a showing of a litigation funding scheme engaged in by the Plaintiff for this case. That litigation funding scheme, which Plaintiff's attorney sought to exclude through a motion in limine, and

if properly adjudicated, would have left the Plaintiff with a lack of standing from which to pursue the case.

## ARGUMENT

### I.     Standard of Review

The Court should analyze this judgment under a de novo standard of review. The Appellant maintains that the District Court violated due process in its handling of discovery, entry of default, and in its calculation of damages on the judgment. Void judgments are "legal nullities" and require de novo review by the appeals court. *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998).

Federal Rule of Civil Procedure 55(c) maintains that courts can set aside a default judgment for good cause. Fed. R. Civ. P. 55(c). Good cause for setting aside a judgment exists when there is a valid defense or the default judgment was entered erroneously. *Id.* Appellant contends that valid defenses such as the qualified reporter's privilege and burdensome, overly broad discovery apply in this case. Additionally, the default was entered erroneously based on plaintiff's

counsel's issues inability to meet certification requirements during requested discovery. *See* ECF No. 43. Taken together, Appellant's defenses and the burdensome issues surrounding discovery establish good cause for setting aside the default.

The nullity of the District Court judgment due to due process violations and the good cause for setting aside the default judgment in the District Court serve as grounds for de novo review.

## II. The Judgment Fails the Three-Pronged Test for Excessive Punitive Damages.

Due process forbids "grossly excessive" punitive awards. *BMW of N. Am. v. Gore*, 517 U.S. 559, 562, 116 S. Ct. 1589, 1592 (1996). Courts evaluate: (1) the reprehensibility of the defendant's conduct; (2) the ratio between punitive and actual or potential harm; and (3) comparable civil penalties. *Id* at 575–85. The Supreme Court refined the analysis, emphasizing five reprehensibility considerations and cautioning that few awards with ratios exceeding single digits will satisfy due process; where compensatory damages are substantial, a 1:1 ratio may be the constitutional limit. *State Farm Mut. Auto. Ins.*

*Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003).
The alleged harm here is economic, not physical; there is no health-or-
safety risk; Plaintiff is not financially vulnerable; and there were no
merits findings of repeated or intentionally malicious conduct because
the court struck defenses and entered default. On these facts,
reprehensibility is low. See *State Farm,* 538 U.S. at 419. The punitive-
to-compensatory ratio of 8.5: 1 exceeds State Farm's guidance. *Id* at
425. If compensatory damages are substantial $71 million, due
process typically caps punitive damages at or near a 1:1 ratio. *Id*.
Texas exemplary-damages law supplies a benchmark. See *Tex. Civ.
Prac. & Rem. Code § 41.003* (clear-and-convincing proof of fraud,
malice, or gross negligence) and *§ 41.008* (caps of the greater of: two
times economic damages plus up to $750,000 of
noneconomic damages, or $200,000). The award here is out of step
with those statutory limits and purposes. *See* ECF No. 104. The
punitive component should be vacated and remanded for a
constitutionally compliant assessment segregating any statutory
multiplier and applying *Gore/State Farm* and Chapter 41.

## III. The District Judge Violated the Fifth Circuit's Guidance on Sanctions.

Litigation-ending sanctions require a clear record of delay or contumacious conduct and explicit consideration of lesser sanctions. See *Rogers*, 669 F.2d at 320. The Fifth Circuit also requires findings that the client, not only counsel, is at fault; that the misconduct was willful or in bad faith; and that lesser sanctions would be ineffective. See *Conner*, 20 F.3d at 1380–81. Sanctions must be proportionate to the misconduct and preceded by fair warning. *Id* ; Fed. R. Civ. P. 37(b)(2). The court imposed default based on discovery disputes without making the necessary findings and without first exhausting lesser sanctions (monetary sanctions, issue preclusion, evidence limits, adverse inferences, or tailored protective orders). *See* ECF No. 73. That is an abuse of discretion under *Conner* and *Rogers*. The court should reverse the default sanction and remand with instructions to apply lesser, tailored measures consistent with Rules 26 and 37.

## IV. The District Judge Failed to Address Conflicts of Interest.

Conflicts are addressed under the "substantial relationship" test. If counsel previously represented a materially adverse party in a substantially related matter, disqualification may be required. *In re American Airlines, Inc.*, 972 F.2d 605, 614–16 (5th Cir. 1992); *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995). During the District Court case, Johnson raised the issue of conflict of interest with opposing counsel maintaining an imputed conflict through the management of his family trust. ECF 63, p 17, 1-9. "[T]he national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both clients", the District Court's failure to properly address this conflict during the case caused undue prejudice towards Johnson and significantly impairs the validity of the judgment. *In re Dresser Indus., Inc.*, 972 F.2d 540, 545 (5th Cir. 1992). Given overlapping subject matter and potential use of confidential information, the court was obliged to make findings and, if warranted, order screening or disqualification. The court should remand with instructions to decide the conflict under *American Airlines* and *U.S. Fire*.

## V. The Discovery Process Was Used to Harass and Intimidate.

Rule 26(b)(1) requires discovery to be proportional to the needs of the case. Rule 26(g)(1)(B)(iii) obligates counsel to certify requests are not "unreasonable or unduly burdensome or expensive." Courts should actively manage discovery to reduce cost and delay. *See* Fed. R. Civ. P. 26(b)(1), 26(g); Rule 1. The Fifth Circuit recognizes a qualified reporter's privilege that limits compelled disclosure of confidential sources absent a strong showing of need and unavailability from alternative sources. *Miller*, 621 F.2d at 725–27; *Selcraig*, 705 F.2d at 792–98. Texas also codifies protections. *Tex. Civ. Prac. & Rem. Code §§ 22.021--027*. The Fifth Circuit has held that because "the public has much less of an interest in the outcome of civil litigation, in civil cases [...] the interests of the press may weigh far more heavily in favor of some sort of privilege". *United States v. Smith*, 135 F.3d 963, 972 (5th Cir. 1998). The court accepted ever-expanding requests that swept in press-related communications and source materials without applying the qualified privilege,

proportionality, or certification requirements. *See* ECF No. 43. Using impasses over such requests to justify default compounded the error. The court should vacate the sanctions and require proportional, privilege-sensitive discovery on remand, with protective orders as needed. *See* Fed. R. Civ. P. 26(c).

## VI. The District Judge's Actions Were Excessively Harsh.

Case-ending sanctions are "drastic" and must be supported by specific findings; courts should prefer decisions on the merits. *Conner*, 20 F.3d at 1380–81. Rule 1 directs courts and parties to secure the "just, speedy, and inexpensive" determination of every action. Striking defenses, curtailing defense participation, and escalating costs in the face of unresolved privilege and conflict issues moved this case away from a merits resolution and toward a punitive end state. *See* ECF No. 73. The court should reverse and remand with instructions to employ the least severe sanctions necessary, if any, and to prioritize resolution on the merits.

## VII. The District Judge's Refusal to Allow Teleconference Appearance Was Unduly Burdensome.

Rule 43(a) permits testimony by contemporaneous transmission for good cause and compelling circumstances, with appropriate safeguards. While district courts have discretion, that discretion must be exercised to facilitate fair and efficient proceedings, especially where burden and cost impede participation. The court declined teleconference participation for Johnson while later allowing remote participation for a Plaintiff witness. *See* ECF No. 99. Combined with the local-counsel requirement, *N.D. Tex. L.R. 83.10*, the refusal materially increased costs for the defendant. Absent countervailing findings, that asymmetry undermined access to a merits defense. On remand, the court should consider remote participation where appropriate and calibrate procedures to reduce unnecessary burden.

## VIII. The Damages Model Was Flawed.

A default admits well-pleaded allegations of liability, not damages. Unliquidated damages must be proved. *Nishimatsu*, 515 F.2d at 1206–08; *James v. Frame*, 6 F.3d at 310–11. The court may

hold a hearing and must ensure any expert damages model satisfies *Fed. R. Evid. 702, Daubert*, and *Kumho Tire* as applied in this Circuit. See *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244–50 (5th Cir. 2002). The district court accepted Plaintiff's model without a Rule 55(b)(2) evidentiary hearing and without Daubert gatekeeping. Johnson was not permitted to cross-examine the proffered expert or call a rebuttal expert. That procedure cannot sustain an unliquidated, reputational-harm award. The Appeals Court should vacate the damages award and remand for a proper hearing with full *Daubert* analysis and an opportunity for rebuttal.

## IX. Plaintiff's Litigation Financing Scheme Leaves Plaintiff With a Lack of Standing.

The Fifth Circuit has found that in cases where litigation funding and champerty are issues, claims can be dismissed because plaintiffs lack standing under an analysis of the claims. *Crabtree v. Allstate Prop. & Cas. Ins. Co.,* 140 F.4th 623, 625 (5th Cir. 2025). Federal courts have established that when the funder's role in litigation is directly relevant to the damages in a case, discovery

around the question of litigation funding is imperative. *United States of America et. al. v. Healthcare Associates of Texas LLC et. al.*, 3:19-cv-2486 (N. D. Tx. 2019) (Northern District of Texas case where the court granted a motion to compel on the basis that it would uncover evidence of litigation funding relevant to the case). Given opposing counsel's insistence on eliminating any reference to litigation funding from the trial record and their foreknowledge of the issue as admitted on the record, Appellant has reason to believe that broader discovery would enable this litigation funding scheme to come to light. *See* ECF No. 83, p. 2; ECF No. 55, p. 28, 13-15. On review, the appeals court should consider a motion to compel with regard to plaintiff's litigation funding scheme and weigh issues of standing post-discovery while considering dismissal of the plaintiff's claims.

## CONCLUSION

For the foregoing reasons, the Court should reverse the default sanction and punitive damages award and remand for further proceedings consistent with *Gore/State Farm*, Fifth Circuit sanctions

precedent, Rules 26 and 37, the qualified reporter's privilege, and the evidentiary requirements for unliquidated damages under *Rule 55(b)(2)* and *Daubert/Kumho*.

Alternatively, the Court should vacate the judgment in its entirety and direct entry of orders that bring discovery and procedure into alignment with the Federal Rules and due process.

Respectfully submitted,

/s/Charles Johnson
Charles Johnson
617-429-4718
charlescjohnson88@gmail.com

***Pro Se—
Appellant***

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I mailed the attached Appellants' Brief to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit.

/s/Charles Johnson
Charles Johnson

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 2,954 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font for text.

/s/Charles Johnson
Charles Johnson

ORIGIN ID:FMHA  (617) 429-4718
CHARLES JOHNSON

45 COLUMBINE ROAD

MILTON, MA 02186
UNITED STATES US

SHIP DATE: 03NOV25
ACTWGT: 0.40 LB
CAD: 6570468/ROSA2670

TO  **CLERK OFFICE U.S. APPEAL**
    **FOR THE FIFTH CIRCUIT**
    **600 SOUTH MAESTRI PLACE**
    **STE 115**
    **NEW ORLEANS LA 70130**

(000) 000-0000                    REF:



**FedEx**
Express

**E**

REL#
3786346



TRK#  **8857 1660 8007**
0201

**TUE – 04 NOV 10:30A**
**PRIORITY OVERNIGHT**

**XX MSYAG**

NEWA 70130
LA-us  MSY

