## CHARLES JOHNSON,

### Defendant—Appellant



U.S. COURT OF APPEALS
RECEIVED
MAR 20 2026
FIFTH CIRCUIT

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE ~~SOUTHERN~~ Northern DISTRICT OF TEXAS, FORT WORTH DIVISION
### NO. 4:24-CV-00988

---

## APPELLANT'S REPLY BRIEF

---

Charles Johnson
617-429-4718
charlescjohnson88@gmail.com
*Pro Se—*
*Appellant*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................ii

INDEX OF AUTHORITIES...........................................................iii

INTRODUCTION..........................................................................1

ARGUMENT...............................................................................3

I.      The Default Posture Fundamentally Alters the Constitutional
Analysis of Punitive Damages.......................................................3

II.     The District Court's Sanctions Analysis Inverted the Lesser-
Sanctions Inquiry......................................................................8

III.    Appellant Did Not Forfeit the Reporter's Privilege; It Is Integral
to the Sanctions Review ............................................................13

IV.     The Damages Phase Was Structurally Deficient Regardless of
Its Jury-Trial Form ..................................................................16

V.      The Conflict of Interest and Champerty Issues Are
Preserved................................................................................19

CONCLUSION...........................................................................21

CERTIFICATE OF
SERVICE................................................................................23

CERTIFICATE OF
COMPLIANCE.........................................................................23

# INDEX OF AUTHORITIES

## Cases

*Miller v. Transamerican Press, Inc.,*
621 F.2d 721 (5th Cir. 1980)..............................*Passim*

*In re Selcraig,*
705 F.2d 789 (5th Cir. 1983)..............................*Passim*

*BMW of N. Am. v. Gore*
517 U.S. 559 (1996)..............................*Passim*

*State Farm Mut. Auto. Ins. Co. v. Campbell*
538 U.S. 408 (2003)..............................*Passim*

*L. Funder LLC v. Munoz*
924 F.3d 753 (5th Cir. 2019)..............................*Passim*

*Matter of Caton*
157 F.3d 1026 (5th Cir. 1998)..............................4

*Murray v. Solidarity of Labor Org. Int'l Union Benefit Fund*
172 F. Supp. 2d 1134 (N.D. Iowa 2001)..........................5

*Watkins v. Lundell*
169 F.3d 540 (8th Cir. 1999)..............................5

*TXO Prod. Corp. v. Alliance Res. Corp.*
509 U.S. 443 (1993)..............................6

*Am. Career Coll., Inc. v. Medina*
No. CV 21-00698 PSG (SKx), 2023 U.S. Dist. (C.D. Cal. Oct. 6, 2023)..............................7

3

*Ceats, Inc. v. Ticketnetwork, Inc.*
     No. 24-40230, 2025 (5th Cir. Oct. 17, 2025)......................10

*Brinkmann v. Abner*
     813 F.2d 744 (5th Cir. 1987).........................................10

*City of Prague v. CAH Acquisition Co. 7, LLC*
     No. CIV-19-89-G, 2021 U.S. Dist. (W.D. Okla. Mar. 11,
2021).........................................................................11

*Int'l Union v. Bagwell*
     512 U.S. 821, 828, 114 S. Ct. (1994).............................11

*Guzman v. Brown*
     No. 86 Civ. 4291 (DNE), 1987 U.S. Dist. (S.D.N.Y. Mar. 11,
1987).........................................................................11

*Chira v. Lockheed Aircraft Corp.*
     634 F.2d 664 (2d Cir. 1980)........................................12

*Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*
     23 F.4th 442 (5th Cir. 2022).......................................12

*United States v. Klimavicius*
     847 F.2d 28...............................................................14

*Campbell v. Gerrans*
     592 F.2d 1054 (9th Cir. 1979).....................................14

*Miller v. Transamerican Press, Inc.*
     621 F.2d 721 (5th Cir. 1980).......................................14

*Holland v. Centennial Homes, Inc.*
     No. 3:92-CV-1533-T, 1993 U.S. Dist. (N.D. Tex. Dec. 21,
1993).........................................................................15

*Baumann v. Bank of Am.*
       N.A., 734 F. App'x 664 (11th Cir. 2018)............................17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
       509 U.S. 579 (1993)..................................................18

*Kumho Tire Co. v. Carmichael*
       526 U.S. 137 (1999)..................................................18

*See Pipitone v. Biomatrix, Inc.*
       288 F.3d 239 (5th Cir. 2002)......................................19

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*
       336 F.3d 410 (5th Cir. 2003)......................................19

*In re Dresser Industries, Inc.*
       972 F.2d 540 (5th Cir. 1992)......................................20

*Trs. of Purdue Univ. v. Stmicroelectronics, Inc.*
       Civil Action No. 6:21-cv-00727-ADA, 2023 (W.D. Tex. Jan.
18, 2023)..................................................................21

*Crabtree v. Allstate Property & Casualty Insurance Co.*
       140 F.4th 623 (5th Cir. 2025).....................................21

**Statutes**

18 U.S.C. § 1962...........................................................6

**Rules**

Fed. R. Civ. P. 37(b)(2)..................................................22

Fed. R. Civ. P. 26(b)(1)……………………………………………...*Passim*

Fed. R. Civ. P. 55(b)(2)…………………………………………*Passim*

Fed. R. Evid. 702……………………………………………*Passim*

## INTRODUCTION

Appellees' brief confirms rather than refutes the central errors below. Despite running through factual narrative and procedural history, Appellees never answer the three legal questions this appeal presents: one, whether a punitive damages award resting on uncontested allegations, rather than adversarially tested findings, satisfies the constitutional reprehensibility analysis required by *Gore* and *State Farm*; two, whether a district court may bypass every lesser sanction on the theory that the defendant would subjectively welcome contempt; and three, whether a damages phase following a default on liability satisfies due process when the defendant is afforded no meaningful opportunity to present rebuttal evidence or challenge the plaintiff's damages methodology.

Instead, Appellees devote the bulk of their brief to characterizing Appellant's conduct in the most inflammatory terms available and arguing forfeiture at every turn. A punitive damages award that fails *Gore/State Farm* scrutiny is unconstitutional

regardless of whether the defendant raised every procedural objection with textbook precision.

Appellees' brief also reveals a telling conflict. They simultaneously argue that Appellant's defenses were properly stricken because his noncompliance left the court no other choice, yet insist that the resulting damages trial was a full jury trial indistinguishable from an adversarial proceeding. A trial in which one party's defenses have been eliminated, in which no rebuttal expert is designated, and in which the defendant has no ability to present an affirmative case is not the equivalent of a contested trial, and the punitive damages analysis must reflect that.

8

## ARGUMENT

## I. The Default Posture Fundamentally Alters the Constitutional Analysis of Punitive Damages.

Appellees' punitive damages defense rests on two pillars: that Appellant's conduct was highly reprehensible, and that the punitive-to-compensatory ratio is only 1.6:1. Neither withstands scrutiny when the default posture is properly accounted for.

## A. Reprehensibility Cannot Be Measured by Uncontested Allegations.

Appellees argue at length that Appellant's conduct was "calculated," "strategic," and "designed to coerce." Appellees' Br. at 21, 30. Every factual predicate for that characterization derives from the operative Complaint, which Appellees themselves acknowledge is the basis for the factual record. *See* Appellees' Br. at 1 n.1 ("we recite the factual allegations contained in their operative Complaint"). Those

9

allegations were deemed admitted through the default and not proven through litigation on the actual issues.

The *Gore/State Farm* reprehensibility analysis is a constitutional safeguard, not a rubber stamp. *State Farm* identifies five reprehensibility considerations, including whether "the harm caused was physical as opposed to economic," whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others," and whether "the conduct involved repeated actions or was an isolated incident." 538 U.S. at 419. The Court designed these factors to be applied to adjudicated facts and not to complaint allegations that were never subjected to the adversarial process.

Appellees cite *Matter of Caton*, 157 F.3d 1026 (5th Cir. 1998), for the proposition that punitive damages are available after default. This analysis dodges the central question of what the constitutional ceiling is for punitive damages. When the factual basis for reprehensibility consists entirely of deemed admissions rather than

10

contested proof, the reprehensibility finding necessarily carries less weight in the *Gore* calculus. District courts have recognized that punitive damages can be held as excessive when viewed in light of the fact that they stem from uncontested issues stemming from a default judgment *Murray v. Solidarity of Labor Org. Int'l Union Benefit Fund*, 172 F. Supp. 2d 1134, 1154 (N.D. Iowa 2001). Further, appellate courts have found that district courts have abused their discretion in failing to reduce punitive damages awards based on a default judgment *Watkins v. Lundell*, 169 F.3d 540, 547 (8th Cir. 1999). A court cannot simultaneously rely on the procedural fiction of default to establish liability and then treat the resulting record as though it reflects the same quality of proof that an adversarial trial would produce.

The jury's finding of "fraud, malice, or gross negligence" under Chapter 41 does not cure this deficiency. That finding was made on a record in which the defendant's answer had been stricken, no contrary evidence was before the jury, and the defense had no ability to present its case-in-chief. A Chapter 41 predicate finding in that posture cannot

11

carry the same constitutional weight as one rendered after full adversarial proceedings.

### B. The Ratio Argument Requires Proper Accounting of the RICO Trebling.

Appellees characterize the ratio as 1.6:1 by comparing the $15 million exemplary damages award solely against the $9.5 million defamation compensatory award. Appellees' Br. at 35. This framing isolates a single claim and ignores the overall judgment structure.

The total judgment exceeds $72 million, of which $46.5 million derives from RICO trebling under 18 U.S.C. § 1964(c). RICO treble damages are not purely compensatory because they contain a punitive component by design. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (recognizing that statutory multipliers may serve deterrent and punitive purposes). When the punitive character of the RICO trebling is considered alongside the $15 million exemplary award, the aggregate punitive burden on the Defendant is substantially greater than the 1.6:1 ratio Appellees present.

12

Appellant's opening brief cited the 8.5:1 figure to capture this aggregate punitive effect. Regardless of the precise ratio employed, the constitutional question remains: whether the total punitive burden imposed on a defaulting defendant based on uncontested allegations satisfies due process. *State Farm* instructs that where compensatory damages are "substantial," the ratio should approach 1:1. 538 U.S. at 425. Further, District Courts have recognized that, in situations where a default based on discovery serves as the basis for the entry of judgment, punitive damages should closely tail compensatory damages *Am. Career Coll., Inc. v. Medina*, No. CV 21-00698 PSG (SKx), 2023 U.S. Dist. at \*26 (C.D. Cal. Oct. 6, 2023). Even accepting Appellees' $9.5 million compensatory baseline, a $15 million exemplary award layered on top of $46.5 million in trebled RICO damages produces a total judgment that dwarfs the actual economic harm shown at trial.

**C. The Chapter 41 Benchmarks Confirm the Award Is Excessive.**

13

Appellees argue the verdict "fits Chapter 41's cap without any reduction." Appellees' Br. at 35. However, the *Gore* comparable-penalties guidepost looks not to whether a verdict technically survives a statutory formula, but to whether the award is "in line with the sanctions imposed in other cases for comparable misconduct." 517 U.S. at 575. The question is proportionality, not mere arithmetic compliance. Appellant did not raise a cap objection below because the constitutional argument under *Gore* is independent of state-law caps since it asks whether the penalty is proportionate to the misconduct, assessed in context.

## II. The District Court's Sanctions Analysis Inverted the Lesser-Sanctions Inquiry.

Appellees argue that the District Court "properly applied the Muñoz framework" and that Appellant has "forfeited" his sanctions challenge through inadequate briefing. Appellees' Br. at 44. Neither of these contentions are correct.

### A. The Fourth Muñoz Factor Was Not Properly Applied.

14

The fourth *Muñoz* factor requires the court to find that "a lesser sanction would not substantially achieve the desired deterrent effect." *L. Funder LLC v. Munoz*, 924 F.3d 753, 759 (5th Cir. 2019). The District Court's analysis of this factor rested on a novel theory: that incarceration for contempt would not work because Appellant would treat jail as an opportunity for "martyrdom." ROA.1223.

This reasoning inverts the lesser-sanctions inquiry. The question under *Muñoz* is whether lesser sanctions could achieve compliance and not whether the defendant would derive subjective satisfaction from them. A defendant's public bravado about the prospect of jail does not transform coercive contempt into an inadequate remedy. Coercive civil contempt works precisely because continued confinement creates mounting pressure to comply, regardless of the contemnor's stated preferences. Indeed, the post-judgment proceedings confirm this: Appellant was eventually jailed for contempt of post-judgment discovery orders, demonstrating that the District Court itself recognized contempt as a viable enforcement mechanism.

15

More fundamentally, the District Court never tried the intermediate sanctions that the Fifth Circuit requires courts to consider before resorting to the "death penalty": monetary sanctions, issue preclusion on specific topics, adverse inference instructions, evidence limitations, or tailored protective orders. *See Muñoz*, 924 F.3d at 759. The court moved directly from ordering third-party vendor review to striking all pleadings, which presented an overreach in considering appropriate sanctions *Ceats, Inc. v. Ticketnetwork, Inc.,* No. 24-40230, 2025 at *27 (5th Cir. Oct. 17, 2025) (court found that death penalty sanctions were invalid because little harm was presented), *Brinkmann v. Abner,* 813 F.2d 744, 749 (5th Cir. 1987) (court found that litigation ending sanctions ordered in light of the raising of a valid, constitutional privilege amounted to an abuse of discretion). The fact that the third-party vendor order was not complied with does not excuse the failure to consider the full spectrum of intermediate remedies.

16

Appellee's brief further claims that the Appellant's attitude towards lesser sanctions, namely wanting to be cast as a "martyr", served as a basis for excluding the possibility of employing lesser sanctions Appellees' Br. at 42. Appellant's attitude towards contempt is irrelevant to the lesser sanctions analysis *City of Prague v. CAH Acquisition Co. 7, LLC*, No. CIV-19-89-G, 2021 U.S. Dist. at *8 (W.D. Okla. Mar. 11, 2021) (coercive sanctions should seek to compel compliance), *Int'l Union v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 2557 (1994) (character of the relief sought should be considered in issuing sanctions). Appellant's subjective view of the sanctions or the prospect of such sanctions benefitting the appellant is irrelevant in the calculus of whether lesser sanctions could have achieved compliance in the discovery stage of litigation.

Litigation-ending sanctions, such as striking answers, should not be considered when less extreme sanctions will suffice *Guzman v. Brown*, No. 86 Civ. 4291 (DNE), 1987 U.S. Dist. at *4 (S.D.N.Y. Mar. 11, 1987). These sorts of sanctions ought to be only considered when

17

lesser sanctions have already been proven impotent *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 668 (2d Cir. 1980).

Further, any finding of bad faith by the district court during the discovery process does not defeat the obligation to consider lesser sanctions prior towards moving towards a litigation-ending order. Appellate Courts have found that even where bad faith is shown, District Courts can still commit an abuse of discretion in failing to consider lesser sanctions *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 451 (5th Cir. 2022). Because the District Court moved directly to death penalty sanctions during discovery without further considering lesser sanctions, they still could have been found to have committed an abuse of discretion even considering a finding of bad faith.

## B. The Sanctions Argument Is Not Forfeited.

Appellees contend that Appellant's sanctions challenge amounts to "perfunctory, shotgun briefing." Appellees' Br. at 39. Appellant's opening brief identified each *Muñoz* factor, cited the

18

governing precedent, and argued that the District Court failed to exhaust lesser sanctions before imposing the most severe one available. *See* Appellant's Br. at 11. That is sufficient to preserve the issue. Moreover, the constitutional dimensions of this argument, such as that the sanction deprived Appellant of his right to present a defense, are not subject to forfeiture in the traditional sense, as they implicate due process.

### III. Appellant Did Not Forfeit the Reporter's Privilege; It Is Integral to the Sanctions Review.

Appellees argue that the reporter's privilege claim is doubly forfeited: once for failure to brief it adequately on appeal, and again for failure to raise it procedurally below through a formal motion to quash or protective order. Appellees' Br. at 45–49. This framing misunderstands how the privilege intersects with the sanctions analysis.

Appellant does not contend that the reporter's privilege entitled him to blanket immunity from discovery. Rather, the privilege is

19

relevant to whether the District Court's characterization of Appellant's noncompliance as "willful" was correct under the first *Muñoz* factor. When a party resists discovery on the basis of a recognized privilege, even if imperfectly asserted, the failure to comply is qualitatively different from naked obstruction. The District Court's willfulness finding did not account for the basis that noncompliance was attributable to legitimate privilege concerns *United States v. Klimavicius*, 847 F.2d 28, 29 (1st Cir. 1988) (entry of default amounted to abuse of discretion where privilege raised as a basis for noncompliance), *Campbell v. Gerrans*, 592 F.2d 1054, 1058 (9th Cir. 1979) (willful default from discovery cannot be found where party raises valid constitutional privilege).

The Fifth Circuit recognizes a qualified reporter's privilege that limits compelled disclosure of confidential sources absent a strong showing of need. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725–27 (5th Cir. 1980); *In re Selcraig*, 705 F.2d 789, 792–98 (5th Cir. 1983). Appellees argue that this privilege does not apply because Appellant has not identified a specific confidential source or specified

which requests triggered the privilege. Appellees' Br. at 48. But the very discovery requests at issue sought broad production of Appellant's communications across multiple platforms—precisely the type of sweeping demand that implicates press-related protections when directed at someone engaged in journalistic or quasi-journalistic activity.

Appellees further argue that *Miller* holds the privilege "must yield" in a defamation case. Appellees' Br. at 49. But *Miller* requires the court to conduct a balancing analysis, weighing the need for the information against the chilling effect of compelled disclosure. 621 F.2d at 726. The District Court conducted no such analysis. It treated Appellant's resistance as pure obstruction without considering whether any portion of the discovery implicated protected press communications *Holland v. Centennial Homes, Inc.*, No. 3:92-CV-1533-T, 1993 U.S. Dist. LEXIS 21624, at *19 (N.D. Tex. Dec. 21, 1993) (substantial showing that work is not protected required prior to invasion of reporter's privilege). That failure infected the willfulness finding and, by extension, the propriety of the ultimate sanction.

21

A pro se litigant's failure to invoke the precise procedural vehicle should not result in forfeiture when the substance of the privilege objection was raised orally at hearings and was known to the court. The court was on notice that Appellant's resistance to discovery was grounded in privilege concerns, and its sanctions analysis should have reflected that.

### IV. The Damages Phase Was Structurally Deficient Regardless of Its Jury-Trial Form.

Appellees' most significant recharacterization is their insistence that the damages phase was a "full jury trial" and therefore immune from the procedural requirements of Rule 55(b)(2). Appellees' Br. at 43. The label attached to the proceeding does not determine whether it satisfied due process.

### A. A Damages Trial Following Default on Liability Is Not an Ordinary Adversarial Proceeding.

When liability has been established by default rather than adjudication, the court retains a heightened gatekeeping obligation with respect to damages, particularly for unliquidated, speculative categories. The fact that the proceeding was styled as a "jury trial" does not transform it into one. Appellant's answer had been stricken. He had no ability to present an affirmative defense, no designated rebuttal expert, and no capacity to offer competing evidence on damages. The "trial" was, in substance, an ex-parte damages hearing with the formality of a jury.

Appellees emphasize that Appellant "did not object to that evidence at trial." Appellees' Br. at 55. Appellant's ability to prove damages at trial being hampered by his previous default amounted to an abuse of discretion by the District Court *Baumann v. Bank of Am.*, N.A., 734 F. App'x 664, 671 (11th Cir. 2018) (proper course was to hold an evidentiary hearing considering default). A party whose defenses have been stricken and who has been denied the ability to present a case-in-chief is in no position to lodge the kind of evidentiary challenges that Appellees now fault him for omitting. The

23 .

structural deficiency is the point: the proceeding was designed in a way that precluded meaningful adversarial testing of the damages evidence.

**B. The Daubert Objection Is Not Forfeited Because the Structural Error Encompasses It.**

Appellees argue Appellant "invokes Daubert for the first time on appeal." Appellees' Br. at 23. But the failure to conduct *Daubert* gatekeeping is part of the broader structural complaint: that the damages phase did not afford Appellant a meaningful opportunity to challenge the reliability of the damages evidence. The District Court accepted Plaintiffs' damages model including speculative categories like "lost earned media value" without any gatekeeping analysis under Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), as applied in this Circuit. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244–50 (5th Cir. 2002).

Appellees contend that "expert testimony was not necessary to the jury's verdict." Appellees' Br. at 23. However, the damages model relied substantially on Lambert's own quantification of lost earned media ($12.4 million), lost fee income ($1.6 million), and anticipated public relations rehabilitation costs ($1.24 million). These are precisely the types of speculative, forward-looking damages that require expert methodology and evidentiary gatekeeping and not merely the plaintiff's own estimate of his losses. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 418 (5th Cir. 2003) (court found that a default did not automatically establish damages). The absence of any challenge to that methodology is not a product of waiver; it is a product of the structural posture imposed by the default.

**V. The Conflict of Interest and Champerty Issues Are Preserved.**

Appellant acknowledges that the conflict-of-interest issue was not developed with the procedural rigor that would be expected of

25

represented counsel. The District Court instructed Appellant to "file something to put that before the Court," ROA.1538, and Appellant did not follow through with a formal motion. Appellant does not seek reversal on this ground alone.

However, Appellant respectfully submits that the conflict issue is relevant to the broader question of whether the proceedings below were fundamentally fair. Opposing counsel's firm maintained a relationship with the administration of Appellant's family trust, a relationship that, under *In re Dresser Industries, Inc.*, 972 F.2d 540, 545 (5th Cir. 1992), warrants at minimum a factual inquiry. Should this Court remand on other grounds, Appellant requests that the District Court be directed to resolve this issue.

Similarly, the champerty issue is preserved to the extent that the record reflects Plaintiffs' counsel's own acknowledgment of a funding arrangement. *See* ECF No. 55, p. 28, 13–15; ECF No. 83, p. 2. Appellees' attempt to characterize this as a "conspiracy narrative" does not address the specific record evidence. Appellees' Br. at

26

56–58. Appellant does not necessarily claim that litigation funding per se defeats Article III standing. Rather, the argument is that the funding arrangement's relevance to the damages model and the real party in interest question warranted discovery that was never permitted. Further, the questions surrounding litigation funding are central to broader themes around the District Court action and would illuminate the full scope of the controversy. Given Appellant's status as a journalist and the raising of associated privileges in the District Court action, discovery and evidence surrounding a litigation funding scheme would present conflicts of interest in the action and raise issues regarding standing. *Trs. of Purdue Univ. v. Stmicroelectronics, Inc.*, Civil Action No. 6:21-cv-00727-ADA, 2023 at *9 (W.D. Tex. Jan. 18, 2023) (evidence of litigation funding relevant where standing and conflicts of interest are presented as legitimate concerns). The District Court should not have granted the Appellee's motion in limine surrounding this issue and allowed it within the scope of discovery, and the Under *Crabtree v. Allstate Property & Casualty Insurance Co.*, 140 F.4th 623 (5th Cir. 2025), questions about the assignment or

27

financing of claims bear on the court's ability to assess standing and the real party in interest. On remand, Appellant should be permitted to pursue targeted discovery on this issue.

## CONCLUSION

For the foregoing reasons, this Court should reverse the default sanction and punitive damages award and remand for further proceedings. Specifically, Appellant requests that the Court:

1. Vacate the punitive damages award as unconstitutional under *Gore* and *State Farm*, and remand for a constitutionally compliant assessment that accounts for the default posture and the aggregate punitive burden of the judgment.

2. Reverse the order striking Appellant's pleadings as an abuse of discretion under *Muñoz*, and remand with instructions to apply lesser, tailored sanctions consistent with Rules 26 and 37.

28

3. In the alternative, vacate the damages award and remand for a proper hearing with full *Daubert* analysis and an opportunity for Appellant to present rebuttal evidence.

4. On remand, direct the District Court to resolve the conflict-of-interest issue and permit targeted discovery regarding the litigation funding arrangement.

Respectfully submitted,

/s/Charles Johnson
Charles Johnson
617-429-4718
charlescjohnson88@gmail.com

*Pro Se—Appellant*

29

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, I mailed the attached Appellants' Brief to the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit.

/s/Charles Johnson
Charles Johnson

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 3,423 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font for text.

/s/Charles Johnson
Charles Johnson

30

